# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

LaSHAWN R. PETTUS-BROWN,

        Petitioner,    :    Case No. 1:14-cv-292

- vs -    District Judge Michael R. Barrett
    Magistrate Judge Michael R. Merz

BRIAN COOK, Warden, Pickaway
  Correctional Institution,

        :

        Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits.

The parties advise that Pettus-Brown has been transferred to the Pickaway Correctional Institution. Pursuant to Fed. R. Civ. P. 25, the present Warden of that institution, Brian Cook, is substituted as Respondent herein and the caption amended as set forth above.

**Procedural History**

Pettus-Brown was indicted on various counts of theft in connection with funds he received from the City of Cincinnati to renovate the Empire Theater in Over-the-Rhine. A jury found him guilty as charged and he was sentenced to four years confinement with terms of community control and post-release control to follow incarceration. The convictions were affirmed on appeal, but no further appeal was taken to the Ohio Supreme Court.

Upon a finding of probable cause to believe Pettus-Brown had violated the conditions of

his community control sentence, the Hamilton County Common Pleas Court issued a warrant for his arrest. Additional charges of failure to comply with community control conditions were filed in December 2013.

Pettus-Brown pled no contest to the violations, was found guilty, and sentenced to three years incarceration for the violations, the term of confinement he is now serving. He appealed to the First District Court of Appeals raising one assignment of error: "The trial court erred as a matter of law by improperly sentencing appellant for a violation of his community control sanction." (Brief of Defendant/Appellant, Doc. No. 43, Ex. 22, PageID[1] 517.) The First District Court of Appeals affirmed and Pettus-Brown did not appeal to the Ohio Supreme Court. He moved to reopen his appeal under Ohio R. App. P. 26(B), but the First District denied the application for failure to set forth a proposed omitted assignment of error.

Petitioner then filed his habeas corpus petition in this Court on April 8, 2014, setting forth the following Grounds for Relief:

> **Ground One:** Mr. Pettus-Brown, under case # B0500613, was illegally and unlawfully sentenced under 2929.14 of the Ohio Revised Code (O.R.C) (see Doc. I, exhibit A), completed the entire illegal and unlawful sentence; however IS still being unlawfully confined at the Hamilton County Justice Center, under the direct custody of the Hamilton County Sheriff, Defendant Jim Neil.
>
> **Ground Two:** The State of Ohio does not have personal jurisdiction over LaShawn Pettus-Brown because the matter has been settled in accordance with 2901.23 and 2929.31 of the O.R.C. on Jan. 22, 2014. (see Doc. 1, exhibit B).
>
> **Ground Three:** Liability was assumed in accordance with 2901.23 of the O.R.C. Because Japan Entertainment Group (JEG)

---

[1] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page. The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference. (E.g., Defendant's Motion to Dismiss, Doc. No. 27, PageID ___.) The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy. Therefore, nonconforming filings will be stricken.

> agreed to "tolerate" the conduct of Chairman/CEO LaShawn Pettus-Brown, JEG has a corporate right to indemnify any of its employees, officers, or agents.
>
> Detention is unconstitutional as it violates LaShawn Pettus-Brown's right to "Equal Protection of the Law" which is protected under the 14th Amendment of the United States Constitution.
>
> Under 2901.23 of the O.R.C. JEG has accepted criminal liability for the case: therefore, LaShawn Pettus-Brown is granted personal immunity from prosecution. Furthermore, JEG is an International company, which grants LaShawn Pettus-Brown jurisdictional immunity according to the 11th Amendment of the United States Constitution. The UCC1 filing by JEG (see Doc. 1, exhibit B) establishes sovereign sanctioning thus granting LaShawn Pettus-Brown sovereign immunity.
>
> The Federal Government explicitly states in Title 22 U.S.C. Section 254(d) that cases against a party having immunity must be dismissed. It is a federal crime to prosecute a person with such rights in accordance with Title 18 U.S.C. Sections 112, 241 and 242. The State of Ohio does not have legislation to hear cases pertaining to violations of' Title 18 U.S.C. or Title 22.
>
> **Ground Four**: Defendant Neil, Sheriff of Hamilton County, is unlawfully detaining Mr. Pettus-Brown in custody. The Defendants have indeed conspired to cause further hardship by illegally sentencing Mr. Pettus-Brown to an additional three years of confinement which is double jeopardy on an already illegal sentence. Now, the Defendants have positioned themselves to transfer custody of Mr. Pettus-Brown. Therefore, I respectfully request an immediate hearing before the Court on this Motion with the presence of Defendant Neil (or Defendant Neil's representative), or the representative for the Ohio Dept. of Correction, should custody be transferred prior to this Motion being heard, and myself.

(Petition, Doc. No. 1.)

As part of his Reply, Pettus-Brown departs substantially from the claims as pled in the Petition. He characterizes his claims as Ground 1 – Sovereign Immunity, Ground Two - Jurisdictional Immunity, Ground Three – Personal (Corporate) Immunity, and Ground Four – Commercial Discharge (Reply, Doc. No. 48, PageID 666-67).

3

A party cannot amend a habeas corpus petition just by stating different claims in the Reply. Rather one must follow the procedure required by Fed. R. Civ. P. 15. 28 U.S.C. § 2242. Pettus-Brown has never effectively amended his Petition. Nevertheless, for the sake of completeness, this Report deals with all these non-pled claims, positioning them with the closest pled Ground for Relief.

Upon initial review of the Petition under Rule 4 of the Rules Governing § 2254 Cases, Magistrate Judge Litkovitz issued an Order to Show Cause (Doc. No. 2). In lieu of a return of writ in response, the Attorney General filed a Motion to Dismiss (Doc. No. 8). In his Response (Doc. No. 9) thereafter, Pettus-Brown has claimed the State had no authority to file a Motion to Dismiss in lieu of an answer. Both the Magistrate Judge and District Judge Barrett have repeatedly rejected this claim (See Order, Doc. No. 47). Despite those rulings, Pettus-Brown persists in this position in his Reply (Doc. No. 48). Because the issue has already received thorough judicial consideration, no further analysis is warranted in this Report.

Instead of dismissing the Petition on Respondent's Motion, the Magistrate Judge stayed these proceedings to allow Pettus-Brown to file motions for delayed direct appeal in the Ohio Supreme Court not later than April 19, 2015 (Scheduling Order, Doc. No. 30, PageID 303). He never did so. The Magistrate Judge then dissolved the stay and ordered the Respondent to file a return (Doc. No. 38). The Respondent has done so, along with the state court record (Doc. Nos. 43, 44, 45). Pettus-Brown moved to strike those filings on his prior theory and in the alternative filed a Reply (Doc. No. 49). The case is therefore ripe for decision.

**Ground One:  Sentence Unlawful**

In his First Ground for Relief, Pettus-Brown argues his sentence of confinement for violation of the community control conditions is unlawful under Ohio Revised Code § 2929.14. This appears to be the claim Pettus-Brown raised on direct appeal, although his Brief refers to Ohio Revised Code § 2929.15, the community control statute (Brief, Doc. No. 43, PageID 522, et seq.)  In any event, the claim was argued purely as a matter of Ohio law.  Pettus-Brown does not plead any federal constitutional violation in the text of his First Ground for Relief.

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In his Reply, Pettus-Brown does not address this argument of Respondent.

Ground One should be dismissed with prejudice for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Two:  Lack of Personal Jurisdiction**

In his Second Ground for Relief, Pettus-Brown asserts the State of Ohio lacks "personal jurisdiction because the matter has been settled in accordance with 2901.23 and 2929.31 of the

O.R.C. on Jan. 22, 2014." In the Petition he refers for proof to "Doc. 1, exhibit B." No such document exists.

As he explains this theory in his Reply, it is that he has not contracted with the State of Ohio to be subject to its statutory jurisdiction and there are no clauses of either the Ohio Constitution or the United States Constitution that subject him to "the statutory jurisdiction of the State of Ohio."

The jurisdiction of the State of Ohio to punish persons for crimes committed within the state does not depend on contract. Ohio, as one of the sovereign States of the United States, has the power to punish persons for such crimes. It does not depend on citizenship – a foreign national committing a crime in Ohio, a person who has never "contracted" to submit himself to the jurisdiction of Ohio courts, is nonetheless amenable to process issuing from those courts. If he is found somewhere outside the State, he may be returned here by the authority of the State or foreign country where the arrest is made. That is what happened in this case: Pettus-Brown was arrested on a warrant for violating his community control sanction in California and extradited to Ohio.

As for Pettus-Brown's claim that this Ground for Relief has somehow been "settled" with the State, he provides no record reference in his Reply to any such purported settlement. (See Doc. No. 48, PageID 669, referring to "Ex. ___.")

Pettus-Brown claims he challenged the jurisdiction of the Hamilton County Common Pleas Court and "the state court denied relief without presenting any proof of jurisdiction. . . ." (Reply, Doc. No. 48, PageID 670, citing Doc. No. 8, Ex. 14.) The referenced exhibit is a *pro se* Motion to Dismiss filed in the Hamilton County Common Pleas Court January 22, 2014. *Id.* at PageID 91, et seq. However, in that exhibit he does not challenge personal jurisdiction, but instead

6

raisesthe claim that a corporation, Japan Entertainment Group Co. Ltd., has assumed criminal liability in the case.  This is the claim made in Ground For Relief Three, not Ground Two.  Personal jurisdiction means jurisdiction of the person of a litigant.  In this case Ohio had obtained personal jurisdiction by virtue of the extradition warrant from California.  So far as his papers show, Pettus-Brown never challenged the constitutionality of his arrest in California and his extradition.

Respondent also asserts this Ground for Relief is procedurally defaulted because it was not raised on appeal to the First District Court of Appeals.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).  *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*. Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485; *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985).  Failure to present an issue to the state supreme court on discretionary review constitutes procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).  "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7(1999)); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]"). The corollary to this rule is that where a petitioner raised a claim in the state court but in violation of a state's procedural rule, a state court must expressly reject the claim on that procedural ground for a federal court to deem the claim defaulted. *See Williams*, 460 F.3d at 806 (noting that a state court's expressed rejection of a petitioner's claim on

procedural basis and petitioner's complete failure to raise a claim in state court are the two ways a claim can be in procedural default).

Pettus-Brown makes no response to the procedural default argument, except for his meritless claim that this defense was waived when the State filed a motion to dismiss rather than a return on Judge Litkovitz's Order to Show Cause. Because in fact Pettus-Brown failed to include this claim in his direct appeal, it is procedurally defaulted.

Ground for Relief Two should be dismissed with prejudice on the merits and as procedurally defaulted.

**Ground Three:  Corporate Assumption of Liability**

In his Third Ground for Relief, Pettus-Brown claims Japan Entertainment Group Co. Ltd., has assumed criminal liability in the case under Ohio Revised Code § 2901.23.

This Ground for Relief is patently frivolous. Ohio Revised Code § 2901.23 provides the circumstances in which an organization can be held criminally liable under Ohio law. There is no provision made for an organization to assume the criminal liability of an individual. Given the ease with which a corporation can be created in Ohio, virtually anyone found criminally guilty could avoid imprisonment by creating a corporation and then having it "assume" his or her liability. Pettus-Brown points to no legal authority at all allowing such an assumption, much less any case law finding such a right under the Constitution.

As part of Ground Three, Pettus-Brown adverts to his claim, made in the Motion to Dismiss in Common Pleas Court, that he is entitled to sovereign immunity under 22 U.S.C. § 254(d). That section provides immunity from prosecution in American courts, state or federal,

by any person with diplomatic privileges and immunities.  Suffice it to say that Pettus-Brown submitted no evidence to the Ohio courts that he was the diplomatic representative of any foreign nation.

In his Reply Pettus-Brown argues this claim as sovereign immunity and claims himself to be sovereign.  As a basis for his supposed sovereignty, he points to documents he sent to the Ohio Attorney General in January 2014 declaring himself to be sovereign and notes that the State has never "rebutted" that claim or even responded.

If it were that easy to remove oneself from the sovereignty of the United States and of the fifty States, it would not have been necessary to fight the bloodiest war in American history to prevent the secession of the Confederacy.  As Abraham Lincoln asserted legally and enforced with the Union Army, the American Union is perpetual.

But Pettus-Brown argues the State agreed with his declaration of sovereignty – indeed, entered into a contract with him about it – by not responding to his declaration.  A person cannot impose a contractual obligation on another by sending a letter and demanding a response on penalty of entering into a binding contract.  Pettus-Brown's various letters and declarations to the Ohio Attorney General after he pled no contest to the community control violations are of absolutely no legal force or effect.

**Ground Four:  Double Jeopardy**

Pettus-Brown argues it was a violation of the Double Jeopardy Clause to imprison him again on the same conviction as his first four-year term of confinement.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution

affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

Pettus-Brown cites no Supreme Court case law which recognizes a Double Jeopardy violation when community control, formerly known as probation, is revoked because of violation of one of the conditions. As then-Magistrate Judge Timothy Black held when faced with this claim:

> The courts, including the Sixth Circuit, have unanimously held that the Double Jeopardy Clause is not implicated when an additional term of imprisonment is imposed upon the revocation of supervised release and probation, because the revocation of supervised release is not considered a new punishment "but rather is attributable to the original conviction." *See, e.g., United States v. Flanory*, 45 Fed. Appx. 456, 462 (6th Cir. Sept. 3, 2002) (not published in Federal Reporter); *see also United States v. Dees*, 467 F.3d 847, 853 (3rd Cir. 2006), *cert. denied*, 552 U.S. 830, 128 S. Ct. 52, 169 L. Ed. 2d 45 (2007); *United States v. Amer*, 110 F.3d 873, 884 (2nd Cir.), *cert. denied*, 522 U.S. 904, 118 S. Ct. 258, 139 L. Ed. 2d 185 (1997); *United States v. Coleman*, 241 Fed. Appx. 945, 2007 WL 2683718, at *1 (4th Cir. 2007) (unpublished) (citing and quoting *United States v. Evans*, 159 F.3d 908, 913 (4th Cir. 1998) ("A term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence.")); *United States v. Cazares-Cazares*, 68 Fed. Appx. 793, 794 (9th Cir. June 13, 2003) (not published in Federal Reporter) (citing *United States v. Soto-Olivas*, 44 F.3d 788, 790-91 (9th Cir.), *cert. denied*, 515 U.S. 1127, 115 S. Ct. 2289, 132 L. Ed. 2d 290 (1995)).

*Dickens v. Brunsman*, 2009 U.S. Dist. LEXIS 90103, *32-33 (S.D. Ohio Aug. 24, 2009), adopted

11

2009 U.S. Dist. LEXIS 90099 (S.D. Ohio Sept. 29, 2009)(Barrett, D.J.), *quoting Weaver v. Moore*, No:1:06-cv-557, 2007 U.S. Dist. LEXIS 98783, 2008 WL 697705, at *14 (S.D. Ohio Nov. 6, 2007).

In addition to being without merit, this Double Jeopardy claim is barred by Pettus-Brown's procedural default in failing to present it to the Ohio courts at any level.

In his Reply, Pettus-Brown makes no response on the Double Jeopardy claim.

However, in his Reply, Pettus-Brown treats as his Fourth Ground for Relief the purported "commercial discharge" of his Common Pleas case. He asserts that "OAG [Ohio Attorney General] has clearly admitted and agreed that the charges in B0500613 were in fact discharged. See Exh. 3." (Doc. No. 48, PageID 667.) Exhibit 3 (PageID 682-86) contains no admission at all by the Ohio Attorney General. It consists of Pettus-Brown's "Affidavit in Support of Sovereignty and Commercial Discharge."

The Magistrate Judge is unaware of any law which permits a convicted criminal to "commercially discharge" his conviction. Moreover, as noted above with the sovereign immunity claim, a person cannot impose an obligation on a State by sending a piece of paper to its Attorney General and demanding a response. Finally, Pettus-Brown has cited no Supreme Court precedent finding it to be a violation of the United States Constitution not to recognize such a "commercial discharge" so obtained.

**Conclusion**

The Petition in this case is utterly without arguable merit; all the claims in it have been procedurally defaulted by Pettus-Brown's failure to fairly present them to the Ohio courts. The

Petition should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 12, 2015.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).